ELIZABETH M. HOUK, TRUSTEE, *v.* MEMPHIS CONSTRUCTION Co., *et al.*

(*Nashville.* December Term, 1928.)

Opinion filed April 15, 1929.

104

R. Lee Bartels and K. C. Larkey, for complainant, appellant.

Wilson, Gates & Armstrong, for defendant, appellees.

Mr. Justice Chambliss delivered the opinion of the Court.

Complainant filed her bill to recover rent on offices leased through her agents, Marx & Bensdorf, to J. B. Underberg, and sought a decree against the Construction Company as the assignee of the original lessee. The Construction Company denies liability on several grounds, in substance, (1) that its occupancy, following delivery of possession by Underberg, was as a subtenant merely, and not as an assignee; (2) that complainant is estopped to make the insistence by inconsistent recitals in a former suit; and (3) that the statute of frauds applies.

The Chancellor dismissed the bill, but the Court of Appeals reversed his decree. A petition for a writ of *certiorari* has been granted and argument heard by this Court.

The question as to the nature of the transaction is largely one of fact, and we are of opinion that the Court of Appeals has reached a correct conclusion on grounds set forth in its opinion, to which we refer. Briefly, the testimony of Mr. Chas. Haase, of Marx & Bensdorf, whose high character is conceded by counsel for defendant, while perhaps inaccurate as to one or more details, quite definitely and forcibly sustains the theory of the complainant; and taken in connection with the testimony of Underberg, the conduct of Malkin of the Construction Company at the time of his entry, and particularly the paper signed by him contemporaneously, agreeing for Underberg to retain the offices for two months and expressly referring to the "Assignment of a lease on the rooms 210-212 Messick Building, this date," we think there can be little doubt that the transaction was an assignment, rather than a subletting.

█ It is said that no delivery was made of the lease, but we think the record shows sufficiently a constructive delivery, which is all that is required. Malkin, for the Construction Company, visited the agents and interviewed them touching his taking over of the premises, agreeing, according to Mr. Haase, to assume the obligations of the lease, which was consequently formally assigned to him. Malkin recognized this rental agency as a satisfactory depositary of the paper, which was in their hands subject to his inspection, and he could have had manual delivery thereof at his request. Quite obviously the matter of delivery of the writing is never relatively so important when, as here, there is an actual contemporaneous delivery of possession of the premises, followed by occupancy and payments made in accordance with the terms of the lease. "Constructive" is defined by Bouvier as,

"that which amounts in the view of the law to an act, although the act itself is not necessarily really performed." And under the general head of "Delivery" it is said that, "No particular form of delivery" (of a deed) "is required. . . . The real test is, did the grantor, by his act or words, or both, intend to divest himself of titles? If so the deed is delivered." And again, "any words or acts which show an intention to receive the title will be sufficient to prove the acceptance. 50 S. W. 39."

▇ The statute of frauds does not apply. There was a writing signed by the party to be charged, and it is settled that no more is required. *Lee* v. *Cherry,* 85 Tenn., 707; *Lusky* v. *Keiser*, 128 Tenn., 705.

▇ We also concur with the conclusion reached by the Court of Appeals, on the petition of complainant for a rehearing in that Court, that complainant is not estopped by inconsistent recitals in her pleadings in the former suit. It is not Judicial Estoppel, resting on contradictory statements made on oath, where prejudice is non-essential, that is invoked. The recent case of *Sartain* v. *Dixie Coal Co.*, 150 Tenn., 633, discusses and distinguishes the different classes of Estoppel.

It is that phase of Estoppel resting on inconsistent statements or positions in judicial proceedings that is here invoked. This phase of the doctrine is classified by some authors (10 R. C. L., 670) under the general head of Equitable Estoppel, or Estoppel *in pais,* and its application is subject to limitations not applicable to Judicial Estoppel, or as termed "Estoppel by Oath." *Sartain* v. *Dixie Coal Co., supra.* In the latter class of cases it is not essential that the party invoking it shall have been prejudiced, although even then a showing of honest

mistake will excuse. *McLemore* v. *Railroad,* 111 Tenn., at page 639; *Harris* v. *Water Co.,* 114 Tenn., at page 341; *Stearns Coal & Lumber Co.* v. *Jamestown R. Co.,* 141 Tenn., at page 207.

Here we have *unsworn* pleadings in a *former* suit, where, if estoppel may be applied at all, it will be limited to cases of deliberate and conscious inconsistency. The following pertinent statement is found, supported by numerous citations, in 21 C. J., p. 1064:

"The rules as to the conclusiveness of allegations in pleadings in the same case do not apply with the same strictness in the case of pleadings in another case or proceeding. Although statements in pleadings constitute solemn judicial admissions of fact requiring evidence to contradict them, independent of the estoppel raised by the judgment in the case, allegations or recitals in pleadings in a prior case or proceeding do not as a rule operate as a technical estoppel by record against the party making them, in a subsequent case, proceeding, or transaction, and *a fortiori,* where the allegations or recitals are not inconsistent with the position subsequently assumed by the pleader, or where the other party did not accept or rely on the statements or recitals. Of course no estoppel by record can be invoked where the allegations or recitals did not conclude the pleader in the prior proceeding, as where the action was discontinued or dismissed, without a decision on the merits; nor where the allegations were made through inadvertence or by mistake. Nevertheless, in some cases so-called estoppels by record have been invoked with respect to material allegations or recitals in pleadings, but an examination of these authorities will usually disclose the presence of facts or circumstances under which the pleader might

have been estopped or concluded other than by a technical estoppel by record, as where his admissions, allegations, or recitals were inconsistent with the position he sought subsequently to assume, to the detriment or prejudice of one who properly had a right to rely upon such admissions or statements.''

And, in *Tate* v. *Tate,* 126 Tenn., at page 214, this Court said:

''It may be stated, on the general subject of estoppel, that it cannot be held operative against anyone, unless the statement complained of was made under such circumstances as justified the other party in relying on it, and unless it was relied on, and then it will not be binding where such other party had equal opportunity of ascertaining the truth of the representation.''

Complainant first filed a bill against Underberg, the original lessee, the Construction Company, and one Dlugach, to whom in turn, after some months of occupancy, possession was delivered by the Construction Company. The theory of that bill was that Dlugach had in turn become an assignee of the lease and assumed liability as such. Following the coming in of an answer by Dlugach denying liability and other pleadings that bill was first amended so as to charge occupancy only by Dlugach and later it was dismissed, first as to the Construction Company and later altogether.

Speaking generally of the principle underlying the doctrine of estoppel, it was said in *Van Rensselaer* v. *Kearney,* 11 How., 299, 325, 13 L. Ed., 703, that estoppel ''concludes the truth in order to prevent fraud and falsehood.'' And with reference to the specific phase of the doctrine relied on here, it is said that, ''The rule that a party will not be allowed to maintain inconsistent posi-

tions in judicial proceedings is not strictly one of estoppel, partaking rather of positive rules of procedure based on manifest injustice and, to a greater or less degree, on consideration of the orderliness, regularity, and expedition of litigation.''

Bearing in mind the principles and distinctions referred to, it will be seen that in the instant case the allegedly inconsistent statement was not made oath; that it was not made in the present, but in a former suit; that there has been no adjudication, quite generally held to be essential to the application of this phase of the doctrine; that it was at least modified by amendment in that suit; that it could not have misled the parties, who themselves were in the better position to know the facts and, therefore, the statement was not made ''under such circumstances as justified the other party in relying on it.'' (*Tate* v. *Tate, supra.*) Again, while it does not appear in the present pleadings to be expressly set up that the statement had been formerly made unconsiderately, or in ignorance of the facts, we are inclined to the view that the two records and proceedings as a whole indicate a lack of that deliberate and conscious purpose to mistake the truth which calls for the application of the doctrine in a case like this, where it is not possible that injury or prejudice can result from reliance upon the alleged inconsistent state of facts.

And, finally, it does not appear to us that the specific issue with respect to the statement which was made in the former suit arises on the pleadings now before us at all. There it was alleged that the Construction Company had not only become an assignee of the lease, but subsequently assigned it to Dlugach, and the Construction Company said that this being so, it was not liable. Here

it is alleged only that the Construction. Company became the assignee and was therefore liable. Considered as allegations or statements merely to test their inconsistency, there is none. Both statements may stand together. The latter merely fails to go further and allege an additional and independent fact. An issue arising under the pleadings in the former suit was whether there had been an assignment by the Construction Company to Dlugach. Denied by Dlugach, this issue was abandoned in that suit, before adjudication, first by amendment of the bill and second by dismissal of the bill. That issue is not presented here, as (1) the bill does not so assert and (2) the defendants disclaim any such fact. That issue is not here for determination. It may be essential to recovery that no assignment to Dlugach was made, as alleged in the former suit, but we have no controverted issue in this suit as to that matter. It is the agreed theory of both parties. The estoppel invoked must have a basis in an existing dispute. None arises here. The defendant here invoking estoppel is not setting up and relying for its defense on the truth of the statement made by petitioner in her former pleading and abandoned in this suit. There is, therefore, no identity of issues.

In *Tate* v. *Tate, supra,* NEIL, C. J., was discussing judicial estoppel, the statements having been made under oath, and therefore what he said in that case even more strongly applies to a case of unsworn statements, such as we have here. As has been seen, he announced that estoppel may not be applied, unless (1) the statement complained of was made under such circumstances as justified the other party in relying on it, and unless (2) it was relied on, and (3) not where ''the other party had equal opportunity of ascertaining the truth of the rep-

resentation." It is apparent that these conditions are not met by the Construction Company in the instant case. It was not justified in relying on the statement, and did not rely on it, and had not only equal, but better opportunity of knowing the truth.

The decree of the Court of Appeals is affirmed.